IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | CRIMINAL NO.: 04-1097 JC |
| ) | |
| **ROSEMARY HO,**  ) | |
| ) | |
| Defendant.  ) | |

**GOVERNMENT'S PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW**

The United States, by David C. Iglesias, United States Attorney, and Amy Sirignano, Assistant United States Attorney, proposes the following Findings of Fact and Conclusions of Law:

I.   INTRODUCTION

On Wednesday, March 2, 2005, this court heard argument on Defendant's Motion to Suppress the Indictment (doc. 20), Defendant's Motion to Suppress Count 2 of the Indictment (doc. 46) and Defendant's Motion to Suppress Statement and Supporting Authorities (doc. 21).  The court denied all three motions.  At the conclusion of the hearing, the court requested that the parties submit proposed Findings of Fact and Conclusions of Law for 18 U.S.C. § 876.  Therefore, the government's submits Findings of Fact and Conclusions of Law for the following issues:

1. The second superceding indictment states all material elements of the offenses charged, is sufficient under Fed. R. Crim. Proc. Rule 7(c), therefore, dismissal of the indictment is improper.

2. The victim, Juanita Rowley was the intended recipient of the threatening communication mailed to the Penalty Assessment Section, Motor Vehicle Division, which is sufficient for the element of "addressed to any other person" for 18 U.S.C. § 876(c).

3. A threatening communication that is mailed interstate from Phoenix, Arizona to Santa Fe, New Mexico satisfies the elements of 18 U.S.C. § 875(c).

4. The written communication that the defendant mailed in interstate commerce contained a "threat to injure a person of another," which meets the elements of 18 U.S.C. § 875(c).

II. <u>PROPOSED FINDINGS OF FACT</u>

On or about September 19, 2003, Juanita Estell Rowley, an employee at the New Mexico Motor Transportation Enforcement, Motor Vehicle Division (MVD), Department of Public Safety, was sorting and dividing incoming mail received by the MVD. Ms. Rowley handled a piece of mail, which was pre-addressed to the Penalty Assessment Section, Drivers Services Bureau, Motor Vehicle Division, P.O. Box 1028, Santa Fe, NM 87504-1028, with a return address from Rosemary Ho, 4044 E. Anderson Dr., Phoenix, AZ 85032. After viewing the penalty assessment form (citation) and money order, she noticed a yellow note attached to one of the items in the envelope. The yellow note contained the following message, "CAUTION Touch At your own Risk or use Gloves. HA-HA." The word CAUTION was highlighted in pink. Additionally, on the front of the penalty assessment form was an unknown pink sticky substance.

On or about December 3, 2003, Special Agent (SA) Adam L. Angst and Federal Air Marshal Eugene Bill Green, of the Federal Bureau of Investigation (FBI), Phoenix Division, Joint Terrorism Task Force, contacted Rosemary Ho's aunt at the aunt's residence, 1030 S. Stewart, Apt. 1065, Mesa, Arizona 85202. Ms. Ho was not

there, so SA Angst left his business card and asked Ms. Ho's aunt to please have her call him. The next day, Ms. Ho attempted to telephonically contact SA Angst. She called a few times, but did not leave a message on SA Angst's answering machine at the FBI. Ultimately, SA Angst and Ms. Ho spoke over the phone, and SA Angst asked to meet with her and he offered to come out to her apartment or to meet her in a private place where they could talk. He also offered that she come to the FBI office. Ms. Ho agreed to meet SA Angst and chose to go to the FBI office to speak with him.

On December 4, 2003 at approximately 4:30 p.m., Ms. Ho arrived at the Phoenix FBI office. SA Angst and SA Green met her at the reception area. Since the downstairs interview room was occupied, they went to the third floor conference room. SA Angst offered her some water, and the meeting began.

SA Angst explained to Ms. Ho that she was not under arrest, and that she was free to leave at any time. He also advised her that they had no intentions of arresting her, no matter what she told them. He told her that no matter what happened, she was going to go home that evening. Ms. Ho was not read her *Miranda* rights since she was not in custody. SA Angst obtained biographical data and background information from Ms. Ho. Ms. Ho stated that she lived in Arizona for the past three years. For the next 20 minutes or so, SA Angst showed her three photographs of the citation, the envelope, the money order, and the threatening note that was mailed to New Mexico MVD (Motion to Suppress Exhibits 1A, 1B and 1C), and explained that the woman at the NM MVD who received the citation and the threatening note was very concerned and upset about the unknown substance and the note.

Ms. Ho then told the agents that she was driving on I-10 in New Mexico to her

father's house in New Orleans when she was cited for traveling 80 m.p.h. in a 65 m.p.h. zone. Ms. Ho stated she took the ticket and continued to Louisiana before returning to Arizona. When she returned home, she went to a 7-11 store near her home and purchased an $80.00 money order. Ms. Ho stated she placed the money order in the envelope and sealed it. The envelope was a pre-addressed envelope which was given to Ms. Ho for the purpose of paying the New Mexico penalty assessment form. It was pre-addressed to the Penalty Assessment Section, Drivers Services Bureau, Motor Vehicle Division, P.O. Box 1028, Santa Fe, NM 87504-1028. She then went to a mailbox to mail the letter.

At first, Ms. Ho admitted that the citation and payment was hers, but denied that she included the threatening note with the payment. Ms. Ho stated that she did not know how the note got attached to her citation. Ms. Ho stated that she did not own sticky notes of the same size as the type on which the threat note was written. She also claimed that the handwriting was not hers. Ms. Ho also denied having a boyfriend or roommate who may have written the threatening note. The agents explained to her that her explanation was not possible, and gave her the opportunity to explain how the sticky note got inside the envelope for her citation. Ms. Ho didn't have a explanation.  At no time did the agents raise their voices, touch her, or curse at her. They were not coercive with her.

The agents took a break, gave her water, told her she could use the telephone that was in the conference room if she wanted to call anyone for assistance, and asked her if she needed to use the bathroom. Ms. Ho declined to go to the restroom and declined to use the telephone. Ms. Ho had a cellular phone with her that she could have

used at any time.  The agents brought her water which she did not drink.  Then, after a few minutes by herself in the conference room, the agents returned to the room and spoke to Ms. Ho about the note.  After a few minutes, she began to cry and confessed to writing the threatening note.  The agents were very methodical with Ms. Ho, who stated, a few times before she confessed, "If it will make you guys happy, I'll tell you I did it." SA's Angst and Green told her no, every single time, that they did not want her to tell them anything that was untrue, that they just wanted to know the truth.  The agents further advised Ms. Ho that if she did not write the note, just tell them, but if she did, she should tell them the truth.

     Ms. Ho then told the agents that she wrote the note because she was angry at having to pay $80.00 for a speeding ticket.  Ms. Ho stated she did not have the money because she was a student.  She also stated that she decided to write the note when she was addressing the envelope.  She said that she saw the sticky pad and the highlighter on the coffee table and wrote out the threat, highlighted the word "CAUTION" in pink  stuck it to the ticket.  She stated that she did not plan writing the note ahead of time, and she wrote it on impulse.  Ms. Ho said she chewed a piece of Extra brand bubble gum and put it on the citation.  She added that there was no toxic substance in the envelope or in the gum.  She stated that she did not realize the panic that the note would cause when the envelope was opened.  She told the agents that she knew her actions were wrong, and she made a mistake.  She stated that she was sorry for her actions.

     Additionally, Ms. Ho stated that she would be willing to write a note of apology to the MVD worker who opened the threat letter.  SA Angst asked that instead of a letter of

apology, which she could do at any time, he asked her to write a statement admitting to her actions. After not knowing how to begin her statement, Ms. Ho started to write the statement with her name that she was a student. In the written statement she confessed to writing the threatening note and had mailed the note, in the envelope addressed to the New Mexico MVD. (Attached to this Motion as Exhibit A). However, in her written statement, Ms. Ho wrote that the gum got on the note after she stepped on the gum, and then stepped on the ticket, which was inconsistent with what she had told the agents earlier. At approximately 6:30 p.m., the agents escorted her out of the FBI building.

III.   CONCLUSIONS OF LAW

   1.   The Second Superceding Indictment States All Material Elements of the Offenses Charged, and is Sufficient Under Fed. R. Crim. Proc. Rule 7(c), Therefore, Dismissal of the Indictment is Improper.

The Second Superceding Indictment contains all the elements to charge a violation of 18 U.S.C. § 875(c). An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. Proc. Rule 7(c)(1); *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *United States v. Brown*, 995 F.2d 1493, 1505 (10th Cir. 1993). This rule is derived from the Fifth and Sixth Amendments. An indictment is generally sufficient if it sets forth "the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Kovatch*, 208 F. 3d 1215, 1219 (10th Cir. 2000)(quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)).

Courts will not dismiss a facially valid indictment on the grounds of insufficient

6

evidence. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Jones*, 160 F. 3d 648 (10th Cir. 1998). When a court determines whether an indictment sufficiently informs a defendant of the offense charged, courts give the indictment a common-sense construction. *United States v. Kilpatrick,* 821 F.2d 1456, 1462 (10th Cir. 1987).

The Second Superceding Indictment that the Grand Jury returned against Ms. Ho on October 26, 2004, sets forth all the elements necessary to charge violations of 18 U.S.C. § § 876(c) and 875(c), and adequately gives the defendant notice of the offenses charged. In *United States v. Pennell*, 144 F. Supp. 317, (N.D.C.A. 1956), the defendant challenged the indictment against him claiming that it did not state facts sufficient to constitute an offense against the United States. The defendant argued that the words "to deal with" do not constitute a threat to injure a person of another. The *Pennell* court held that the indictment was "patently sufficient to inform the defendant that he is charged with a specific violation of 18 U.S.C. § 875(c), and denied the defendant's motion to dismiss the indictment.

 Whether the note that Ms. Ho sent to the Motor Vehicle Division was "addressed to any other person", an element of § 876(c), and whether the language, "CAUTION, TOUCH AT YOUR OWN RISK OR USE GLOVES. HA-HA" is a threat, are questions of fact for the jury, and these questions cannot be determined on the defendant's motions to dismiss.

Therefore, consistent with this court's ruling, "I'm satisfied with what you've already briefed, and I'm satisfied that I'm correct in denying both of your motions [to

dismiss the Indictment] . . ."  (Partial Transcript of Proceedings from March 2, 2005, p. 16, lines 2-4).  Any argument challenging the sufficiency of the government's evidence is not properly raised in a motion to dismiss the Second Superceding Indictment.  It is a question for the jury whether the facts support what is alleged, and this court should allow the case to proceed to trial.

> 2. <u>The Victim, Juanita Rowley Was the Intended Recipient of the Threatening Communication Mailed to the Penalty Assessment Section, Motor Vehicle Division, Which Satisfies the Element of "Addressed to Any Other Person" for 18 U.S.C. § 876(c).</u>

The Tenth Circuit in *United States v. Williams,* 376 F.3d 1048 (10th Cir. 2004) stated that "section 876 is ambiguous with respect to who qualifies as a 'person' because it does not define the word 'person.'"  Williams, 376 F.3d at 1053.  *Williams* directs the court to look *at a minimum*, at the envelope and the salutation to determine whether or not the threat is "addressed to any other person" within the meaning of Section 876."  *Williams*, 376 F.3d 1052 (emphasis added).  The *Williams* court's ruling was inclusive, not exclusive.  The court explained that "the phrase, 'addressed to any other person' cannot be read in isolation."  *Id.*  If the *Williams* court concluded that a "government official is a 'person' within the meaning of § 876 *because* communications *addressed to a specific government official are clearly targeted at the natural person who holds that office at the time, regardless of whether the communication also mentions that individual's proper name, (Id.* at 1053)(emphasis added) then, consistent with *Williams*, in this case, in order to determine to whom the note is addressed, and who is contemplated in receiving the threatening note, the court must read the entire note.

The government argued at the hearing, that this court look at the entire context of

8

the note to ascertain who is contemplated in the threat.  Anyone writing the threat, "CAUTION TOUCH AT YOUR OWN RISK OR USE GLOVES.  HA-HA" would anticipate a person, a natural person to open or handle the communication.

Additionally, courts have held that 18 U.S.C. § 876 was enacted to preserve a recipient's sense of personal safety.  *United States v. Williams*, 376 F.3d at 1053; *see also United States v. Aman*, 31 F.3d 550, 555 (7th Cir. 1994); *United States v. Ahmad*, 329 F. Supp. 292 (M.D. Pa 1971)(thrust of section 876 is the prohibition of use of mails to transmit threatening communications whether communication was directed to threatened addressee or addressed to any other person).

With every letter received, a person within the institution or facility will open that letter, regardless of who it is addressed to.  *See United States v. Chapman*, 440 F. Supp. 1269 (E.D. Wis.1977)(threatening letter is "addressed" to person if letter itself is directed to attention of specific person, even though delivery instructions direct that mail carrier deliver letter to institution, such as place of employment; it is an offense under plain language of this section even if threat is directed to person other than addressee); *See also United States v. Ahmad*, 329 F. Supp. at 298 ("It does not matter under the statute that the communication was directed to the threatened addressee or addressed to any other person").[1]  Any reasonable recipient receiving a letter containing an unknown substance after the unsolved nationwide anthrax scare, would interpret the communication and the substance as a threat.  Likewise, Congress, by allowing that the

---

[1] *See also United States v. Blankenship*, 870 F. 2d 326 (6th Cir. 1988)(letter addressed to "the Judge," received by a different, Lincoln Circuit Court Judge); *United States v. Lincoln*, 589 F. 2d 379 (8th Cir. 1979)(letters received in the mail by the Clerk of the U.S. Court of Appeals for the Eighth Circuit).

threat can be to a person other than the addressee, arguably does not foreclose the possibility that the statute includes that the addressee could be a natural person inside the institution.

At the hearing on the defendant's motions to dismiss this court held, "If I got something in the mail that had a note such as that, and there was some sort of substance on the note, I would take it as a threat.  The first thing I would do is get it to the marshals.  So I would take that as a threat." (Partial Transcript of Proceedings from March 2, 2005, p. 6, lines 5-9).  Additionally, the court reasoned,  "I think if [the note] just said, "The District Court," that would be good enough for me.  (Partial Transcript of Proceedings from March 2, 2005, p. 7, lines 1-2).  The court further reasoned, "[I]t does not make any sense, to me, that the statue is so narrowly interpreted that it has to be directed to the individual, I mean, it seems like to me that the State gave her [the defendant] the envelope to send it [the penalty assessment form, or citation] and so obviously it's going to come back to whoever it is in that department.  (Partial Transcript of Proceedings from March 2, 2005, p. 7, lines 23-25; p. 8 lines 1-3).  Therefore, the communication that Ms. Ho mailed through the United State Postal Service in the envelope pre-addressed to the Penalty Assessment Section, Drivers Services Bureau, Motor Vehicle Division containing the unknown sticky substance and the language, "CAUTION TOUCH AT YOUR OWN RISK OR USE GLOVES.  HA-HA" is a threat to injure the recipient of the threatening note.

       3.    <u>A Threatening Communication That Is Mailed Interstate from Phoenix, Arizona to Santa Fe, New Mexico Satisfies the Elements of 18 U.S.C. § 875(c).</u>

A communication that is sent interstate, through the United States mail with the words, "CAUTION TOUCH AT YOUR OWN RISK OR USE GLOVES.  HA-HA," can be charged under 18 U.S.C. § 875(c).  The government argued at the hearing that Congress enacted Section 876 to obtain federal jurisdiction over *intrastate* mailings, for example, a mailing of a threat from Albuquerque, New Mexico to Santa Fe, New Mexico.  Section 875 covers all types of communications containing a threat to injure sent in *interstate* commerce, including emailed threats, telephone threats, and threats sent through the mail *interstate*, as in this case, from Phoenix, Arizona to Santa Fe, New Mexico. (Partial Transcript of Proceedings from March 2, 2005, p. 11, lines 10-21).  A mailing from Phoenix, Arizona to Santa Fe, New Mexico is in *interstate* commerce.  The term "interstate commerce", as used in Title 18, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia.  18 U.S.C. § 10.  Therefore, consistent with the Court's ruling, the Second Superceding Indictment is charged sufficiently for the purposes of 18 U.S.C. § 875(c) to include a threatening communication mailed from Phoenix, Arizona to Santa Fe, New Mexico.

    4.    <u>The Written Communication That the Defendant Mailed in Interstate Commerce Contained a "Threat to Injure a Person of Another," Which Meets the Elements of 18 U.S.C. § 875(c).</u>

The United States presented evidence and testimony that the written communication contained the threat, "CAUTION TOUCH AT YOUR OWN RISK OR USE

GLOVES.  HA-HA."  The court found that the note contained a threat and concluded that the defendant's criminal conduct can be charged under 18 U.S.C. § 875(c).  Whether or not the written communication is a "threat" is a question for the jury.

18 U.S.C. § 875(c) fails to define "threat."  When a word is not defined within a statute, it is normally construed in accordance with its "ordinary, contemporary common meaning."  *Perrin v. United States*, 444 U.S. 37, 41 (1979).  However, the Tenth Circuit has already considered how to define a "threat" as it relates to 18 U.S.C. §844(e).[2]  *United States v. Viefhaus*, 168 F. 3d 392 (10th Cir. 1999).  The Tenth Circuit defined "threat" as a "*declaration of intention*, purpose, design, goal, *or determination to inflict* punishment, loss, or *pain on another, or to injure another* or his property by the commission of some unlawful act."  *Viefhaus*, 168 F. 3d at 395 (emphasis added); *citing Black's Law Dictionary* 1480 (6th ed. 1990); *Webster's Third New Int'l Dictionary* (unabridged) 1176 (1993).  The Tenth Circuit further held,

> It is not necessary to show that a defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat.  *The question is whether those who hear or read the threat reasonably consider that an actual threat has been made.*  It is the making of the threat and not the intention to carry out the threat that violated the law.

*Viefhaus*, 168 F.3d at 395-96 (emphasis in original)*; citing United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987).  Additionally, this circuit directs the district court to focus on the person who received the threat and to consider whether that person reasonably believed that an actual threat was made.  In *United States v. Magelby*, 241 F.3d 1306, 1311 (10th Cir. 2001), the court concluded that the instruction submitted to

---

[2] Section 844 prohibits the willful use of the mails, a telephone, a telegraph or another instrument of commerce to convey a bomb threat.  18 U.S.C. § 844.

12

the jury, advising them to consider, among other factors, "the reaction of the victims and other witnesses to the cross burning in determining the defendant's intent" under 18 U.S.C. § 241[3] was proper.  *Magelby*, 241 F.3d at 1311.  The court concluded that "in determining the existence of a threat in other contexts, this circuit has adopted an objective test, focusing on whether a reasonable person would find that a threat existed."  *Id.; citing Viefhaus*, 168 F.3d at 396.  "To determine whether this objective test is satisfied, this court has stated that a trier of fact may look to the reaction of the recipient of the alleged threat."  *Id; citing United States v. Martin*, 163 F. 3d 1212, 1216 (10th Cir. 1998).

The parties stipulated at the hearing that Juanita Rowley, an employee at the MVD was the recipient of the defendant's envelope which contained the penalty assessment form with an unknown sticky substance, the money order, as well as the stick-on threat. (Partial Transcript of Proceedings from March 2, 2005, p. 21, lines 13-31).  The envelope was mailed from Phoenix, Arizona to Santa Fe, New Mexico.  The envelope and its contents was mailed in interstate commerce.   The yellow post-it note with the threatening words, sent by the defendant to the MVD is a "threat" as defined in the Tenth Circuit.

WHEREFORE, based on the above proposed findings of fact and conclusions of law, and consistent with the court's ruling on the motions, the Defendant's Motion to Dismiss the Indictment and the Defendant's Motion to Dismiss Count 2 of the Indictment should be denied.

---

[3] Section 241 prohibits any person or persons from conspiring "to injury, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States.  18 U.S.C. § 241.

Respectfully submitted,

DAVID C. IGLESIAS
United States Attorney

***Electronically filed 3/14/05***

AMY SIRIGNANO
Assistant U.S. Attorney
201 Third Street, Suite 900
Albuquerque, New Mexico  87102
(505) 346-7274

I certify that a true and correct copy
of the foregoing document was
sent via facsimile to counsel of record
as indicated below this 14th day
of March, 2005.

*Signed/Amy Sirignano*
Amy Sirignano


Alonzo Padilla, Esc.
Office of the Federal Public Defender
111 Lomas, N.W., Suite 501
Albuquerque, NM 87102