IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                   CR. NO. 04-1097 JC (ACE)

ROSEMARY HO,

    Defendant.

**DEFENDANT'S PROPOSED FINDINGS OF**
**FACTS AND CONCLUSIONS OF LAW**

Rosemary Ho, through her attorney, Alonzo J. Padilla, submits the following findings of fact and conclusions of law.

**I.  FINDINGS OF FACTS**

1. In September of 2003, the Defendant, Rosemary Ho was traveling through the state of New Mexico when she was cited by a State Police Officer for speeding. At the time she was given a ticket for the speeding violations, she was provided with an envelope addressed to the Penalty Assessment Division of the New Mexico Motor Vehicles Division so that she could mail her check in for the cost of the speeding ticket which she was advised would be $80. After returning to her home in the Phoenix, Arizona area, Ms. Ho obtained an $80 money order which she mailed together with the penalty assessment in the envelope that was provided by the Motor Vehicle Division.

2.	An investigation was initiated by the Federal Bureau of Investigation after it was discovered that the envelope containing the penalty assessment received by Ms. Ho and her $80 money order payable to the Motor Vehicle Division also contained what is alleged to be a threatening note which stated the following: "Caution, touch at your own risk or use clothes. Ha Ha." In addition to the threat written on a 3" x 3" sheet of paper from a yellow "post it note", a gooey type of substance was also found on the actual ticket or penalty assessment contained in the envelope. The substance found on the penalty assessment or ticket, was later determined to be bubble gum.

3.	The envelope sent to the Penalty Assessment Division was not addressed to any named individual and did not identify any person by their title within the Motor Vehicle Division. It was simply addressed to the Penalty Assessment Division, New Mexico Motor Vehicle Division and was the envelope furnished by the police officer for the payment of such penalty assessments.

4.	The envelope received by the Motor Vehicle Division did contain the penalty assessment or traffic ticket Ms. Ho had received in September of 2003, a money order in the sum of $80 payable to the Penalty Assessment Division and the post it note containing the alleged threat described above. It did not contain any other items that identified anyone by name or title.

5.	The letter which is the subject of the FBI's investigation was not physically opened by Juanita Estelle Rowley, the employee of the New Mexico Motor Transportation

Enforcement Division. Although the alleged threatening note contained in the letter was discovered by Ms. Juanita Rowley on Friday, September 19, 2003, the letter itself had been previously opened in a different section of the Motor Vehicle Division, where mail is received and opened, and contents examined before it is distributed to the appropriate department for further action. The letter that Ms. Rowley received on September 19, 2003, had already been opened and examined by other individuals within the department prior to the time she discovered the alleged threat described above.

6. Due to the nature of the note containing the alleged threat, appropriate action was taken by Ms. Rowley who notified her supervisor regarding the discovery of the note. Ms. Rowley, due to what had occurred in this country on September 11, 2001 was particularly concerned about the threat and any possible contaminations.

7. Other than the alleged threat contained on the post it note, there was no other mention of any threat that would be carried out to harm anyone in the Motor Vehicle Division. In other words, no other means of communication other than the letter sent to the Motor Vehicle Division was used to convey any threat to anyone within the Motor Vehicle Division.

8. The Government indicted Ms. Ho on June 9, 2004 charging her with a violation of 18 U.S.C. § 876(c) which prohibits the mailing of a threatening communication.

9. On August 26, 2004, Ms. Ho, through her counsel, filed a motion with the Court to dismiss the Indictment on the basis that the statute under which Ms. Ho was

3

charged, required as one the elements that the threat be addressed to a person who can be identified by name or to a person who can be identified through their title. In this particular case, counsel argued in his motion to dismiss that the communication was sent to the Penalty Assessment Division and that because no particular person could be identified that the threat was intended to reach, the Government could not prove one of the necessary element of the offense charged in the Indictment.

10. After receiving defense counsels Motion to Dismiss Indictment, the Government sought and obtained a Superceding Indictment which charged Ms. Ho with an additional offense involving the use of interstate communication to convey a threat in violation of 18 U.S.C. § 875(c). Counsel also filed a motion asking that Count II be dismissed on the basis that that particular provision of the U.S. Code was intended to cover threats communicated by means other than mail, such as a telephone, telegraph, e-mail, computer, etc. Counsel argued that 18 U.S.C. § 875(c) was not intended to prosecute individuals who used the mail to convey a threat as that was the purpose of 18 U.S.C. § 876(c), under which Ms. Ho was originally charged by the Indictment.

11. Prior to the time Ms. Ho was indicted by a federal grand jury, Ms. Ho's aunt was contacted by the FBI in an attempt to locate Ms. Ho. Ms. Ho's aunt advised Rosemary Ho that she needed to contact the FBI. Ms. Ho contacted the agent who was involved in the investigation and requested information about why the FBI wanted to talk to her. She was told by the FBI Agent that he could not tell her over the telephone about the purpose of their

investigation and that they would want to meet with her in person. After a short discussion, they agreed to meet at the FBI Building located in Phoenix, Arizona. Ms. Ho did agree to voluntarily appear for the conference with the FBI Agent but did not know the purpose of the investigation. Only after she arrived at the FBI Building was she advised that she was the target of an investigation involving a threatening communication that had been mailed to the Motor Vehicle Division of the State of New Mexico.

12.     Ms. Ho admitted to the agent that she had received a speeding ticket while traveling through the State of New Mexico, that upon her return to Arizona she had purchased an $80 money order and that she sent the penalty assessment and the $80 money order in the envelope provided by the Motor Vehicle Division. However, she denied that she had enclosed in the envelope the threat contained on the "post it note". Although she persisted in her denial that she had anything to do with the post it note, she eventually did state to the agents that if it would make them happy she would admit the allegations. Although the Agents testified that they did not want her to admit something that she did not commit, she did felt compelled eventually to admit the allegations. She also wrote out a written statement that admitted what she was accused of. However, she did not know what to state in the note and was advised by the agents to write down certain matters pertaining to the charges. Prior to submitting the statement, Ms. Ho was interrogated for up to two (2) hours or more and did feel afraid and alone during the interrogation. Ms. Ho does not feel

that the statement she gave was voluntary, particularly since she felt she was in custody in the sense that she did not feel she was free to leave the FBI Building.

13.     The statement provided by Ms. Ho admitting her involvement in this incident was not of her own free will and was a product of a coercive interrogation by the agents involved.

14.     Viewing the totality of circumstance surrounding the interrogation, Ms. Ho felt she was not free to leave the FBI Building.

## II.     CONCLUSIONS OF LAW.

15.     Rule 12(b)(3)(B) of the Rules of Criminal Procedure provide, as it pertains to this case, that "a party may raise...at any time while the case is pending...a claim that the Indictment or Information fails to state an offense."  In this case, Ms. Ho, through her counsel, has filed Motions to Dismiss Counts I and II of the Second Superceding Indictment on the basis that the Government is unable to establish the necessary elements to prove that Ms. Ho is guilty of either of those offenses.

16.     Count I of the Second Superceding Indictment, charging a violation of 18 U.S.C. § 876(c) requires proof of the following elements:

        a.     Deposit of a piece of mail into an authorized depository for mail matter;

        b.     A communication addressed to any other person, and;

        c.     Which contains any threat to kidnap any person or any threat to injure the person of the addressee.

Count I fails to allege the element of "addressed to any other person"; and the Government's evidence is insufficient as a matter of law to convict Ms. Ho.

17.     The meaning of the phrase "addressed to any other person", is an element of 876(c) which was recently addressed by the Tenth Circuit in the case of *United States v. Williams*, 376 F.3d 1048 (10th Cir. 2004).  In the *Williams* case, the Tenth Circuit held that a person, as used in § 876 means a natural person and not an institution.  Even if the letter is not addressed to a particular person by name it must nonetheless be addressed to a person in their official capacity such as "U.S. Attorney" or "Clerk of the Court".  If there is no specific designation of either a person or the title of the person within such organization, the necessary element that it be addressed to any other person cannot be met and as a result, the charge set forth in Count I of the Second Superceding Indictment must be dismissed.

18.     A letter addressed only to a Government agency such as the Federal Bureau of Investigation is not a person for purposes of 18 U.S.C. § 876(c) and thus, must result in a dismissal of the charges.  *See, United States v. Brownfield*, 130 F.Supp.2d 1177, 1183-84.

19.     1 U.S.C. § 1 which contains a definition of a person does not apply to 18 U.S.C. § 876 and does not help the Government's position in this case particularly since the alleged threat was sent to the Penalty Assessment Division of the Motor Vehicle Division and did not name either a person or the title of a person that it was directed at.  For that reason, Count I is defective and under Rule 12(b) of the Federal Rules of Criminal Procedures, the Court can and should dismiss Count I as a matter of law.

20.     The Government, after determining that it might not be able to prove the necessary elements that are required to establish a violation of 18 U.S.C. § 876(c) involving the mailing of a threat, indicted Ms. Ho with a violation of 18 U.S.C. § 875(c) which criminalizes threats transmitted through other forms of communication. That is to say, 18 U.S.C. § 875 was implemented to prosecute persons who used other forms of communication other than mail, to convey a threat by either the use of a telephone, computer, e-mail, telegraph, etc. It was not intended for prosecuting cases where mail was used to convey a threat.

21.     Sections 875 and 876 are companion statutes and were passed by Congress with the intention of criminalizing two (2) separate types of threats. Section 876(c) was passed by Congress to address threats that were sent using the mail system. Whereas, § 876 was enacted by Congress to deal with threats that use other forms of communication such as a telephone, e-mail, telegraph, that is to say means other than mail. The two statutes compliment each other and do not present an opportunity for the prosecution of a single act under multiple statutes.

22.     The Legislative history of both of these sections support Defendants position that the Government was in error when it indicted Ms. Ho for violation of both 18 U.S.C. § 876(c) and 18 U.S.C. § 875(c). Both sections referred to above derive from a 1932 law that criminalized use of mail to communicate a threat with intent to exploit monies. In 1934, Congress broadened the law to prohibit threats made by telegraph and telephone. In 1948,

the law was codified into its present form with two separate and distinct sections, one which criminalizes threats transmitted into interstate commerce (18 U.S.C. § 875(c)) using a telephone, telegraph, e-mail, etc.  Section 876(c) criminalizes threats deposited in any post office or that is delivered by the postal service.  In this case, the Government is relying upon both statutes and as a matter of law the Government cannot establish the necessary elements to prove that Ms. Ho violated either of those statutes and as a result Counts I and II should be dismissed.

23.	Count II which alleges a violation of 18 U.S.C. § 876 further requires evidence that a threat was communicated.  The definition of a threat is not contained in the statute and the Court must look at the interpretation of a threat made by the Courts.  The Tenth Circuit in the case of *United States v. Viefhauf*, 168 F.3d 392, 395 (10th Cir. 1999) adopts a definition in the following terms: a true threat means "a serious threat as distinguished from words as mere political argument, idle talk or jest."  In addition, the Tenth Circuit stated a threat to mean "a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by commission of some unlawful act."  The Government is not able to present any evidence to establish that there was any intent to injure or carry out any threat that would injure someone.  All the Government can establish is that a note containing a warning and not a threat was included in the envelope that was sent to the Motor Vehicle Division.

24.     In order to establish a violation of 18 U.S.C. § 875, the Government must prove a threat to injure the person or another. The communication relied upon by the Government in this case does not state "an intent to engage in future conduct to inflict injury which is the meaning of threat." Rather because it is a warning it is different from a threat. For that reason, the Government's intention to seek charges against Ms. Ho for her conduct must fail as a matter of law. *See United States v. Kosma*, 951F.2d 549, 557 (3rd Cir. 1991) which defined threat as "serious expression of an intention to inflict bodily harm." *See also, United States v. Viefhauf,* at 168 F.3d at 395 (10th Cir. 1999). The message included in the envelope which stated "Caution, touch at your own risk or use clothes. Ha Ha." does not express the sender's intent to engage in future conduct that is intended to injure another and therefore as a matter of law Count II should be dismissed.

25.     The Supreme Court has long recognized that a confession is not admissible if it is not freely and voluntarily given. The admission of evidence of an involuntary confession violates both the Due Process and Self-Incrimination Clauses of the Fifth Amendment. The Supreme Court has recently affirmed that Miranda is a Constitutional Rule that applies whenever the voluntariness of a confession is at issue. *Dickerson v. United States*, 530 U.S. 428, 433 (2000). The Court must look to the totality of the circumstances to determine if the statement is voluntary, that is, whether it was the product of coercion or given after the Defendant's will was overborne. This includes, examining the coercive or overreaching on the part of the police, the Defendants maturity, intelligence, education, physical condition,

mental health and failure of the police to give a proper Miranda warning as well as the details of the interrogation and the length of interrogation. *See Mitchell v. Gibson*, 262 F.3d 1036, 1059 (10th Cir. 2001).

26. Although Ms. Ho may have voluntarily entered the FBI Building for questioning, she was never told why she was wanted for questioning. Furthermore, she was left with the impression that she was not free to leave the FBI Building until after she had admitted her involvement in the offense she was under investigation for. In addition, she was placed in an interrogation room on the 3rd Floor of the FBI Building, in Phoenix, Arizona and at no time was advised of her Miranda rights or that she had the right to leave the FBI Building. For this reason, her freedom of movement was restricted and she honestly felt that she was not free to leave. For that reason, she should have been given Miranda warnings prior to the time that any questioning commenced as she believed she was not free to terminate the interrogation and any reasonable person in her position would have felt the same way. In looking at the totality and circumstances including the location and the length of the interrogation, any reasonable person would have come to the same conclusion. *United States v. Badmus*, 325 F.3d 133 (2nd Cir. 2003); *United States v. Jones*, 187 F.3d 210, 218 (1st Cir. 1999).

27. For the reasons noted above, the statement given by Ms. Ho was not voluntarily given. Furthermore, the failure to give her her Miranda warnings prior to the commencement of any questioning requires that her statement given to the FBI be suppressed.

Respectfully Submitted,

| | |
|---|---|
| I hereby certify that a true copy of the foregoing pleading was faxed to Amy Sirignano, Assistant. U.S. Attorney on this  18th  day of March, 2005. | FEDERAL PUBLIC DEFENDER 111 Lomas NW, Suite 501 Albuquerque, NM 87102 (505) 346-2489 |
|  [Electronically filed]         |  [Electronically filed]                ALONZO J. PADILLA Attorney for Defendant |