IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                     CR. NO. 04-1097 JC

ROSEMARY HO,

        Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

        THIS MATTER came before the Court for hearing on *Defendant's Motion to Dismiss the Indictment*, filed August 26, 2004 (*Doc. 20*), *Defendant's Motion to Suppress Statement and Supporting Authorities*, filed August 26, 2004 (*Doc. 21*), and *Defendant's Motion to Suppress Count Two of the Indictment*, filed December 8, 2004 (*Doc. 46*) (collectively "Motions"). Having considered the Motions, the parties' submissions, the relevant authority, and entertained oral argument and testimony at the hearing, the Court denied the Motions in their entirety. In accordance with its oral rulings on the record at the hearing, the Court enters the following Findings of Fact and Conclusions of Law.

**I.**        **Findings of Fact**

        1.        On or about September 19, 2003, Juanita Estell Rowley, an employee at the New Mexico Motor Transportation Enforcement, Motor Vehicle Division (MVD), Department of Public Safety, was sorting through incoming mail. In the course of sorting, Ms. Rowley handled a piece of mail pre-addressed to the Penalty Assessment Section, Drivers Services Bureau, Motor Vehicle Division, P.O. Box 1028, Santa Fe,

New Mexico 87504-1028.

2. The return address on the piece of mail described above was Rosemary Ho, 4044 E. Anderson Dr., Phoenix, AZ 85032.

3. After handling the envelope described above and viewing the penalty assessment form (citation) and money order, Ms. Rowley noticed a yellow "post-it" note attached to one of the documents in the envelope. The yellow note contained the following message: "CAUTION Touch At your own Risk or use Gloves. HA-HA," and the word "CAUTION" was highlighted in pink.

4. On the front of the penalty assessment form was a pink sticky substance.
On or about December 3, 2003, Special Agent (SA) Adam L. Angst and Federal Air Marshal Eugene Bill Green of the Federal Bureau of Investigation (FBI), Phoenix Division, Joint Terrorism Task Force, contacted Rosemary Ho's Aunt in Arizona and left a message requesting that Rosemary Ho contact them.

5. Eventually, Ho and SA Angst spoke on the phone during which conversation Angst asked Ho to speak with him in person.

6. SA Angst offered several suggestions pertaining to a private meeting place, including but not limited to Ho's apartment or the FBI office.

7. Ho and SA Angst reached mutual agreement that the FBI office in Phoenix would provide the best location for their meeting under the logistical circumstances.

8. Ms. Ho arrived at the FBI office in Phoenix on December 4, 2003 at approximately 4:30 p.m.

9. Ms. Ho was in the reception area where SA Angst and SA Green met her.

10. Angst, Green, and Ho went to the third floor of the building to a private room because the interview room on the ground level was occupied.

11. At the beginning of the meeting, Angst explained to Ms. Ho that she was not under arrest, would not be placed under arrest regardless of what she told them, and that Ms. Ho was free to leave at any time she chose.

12. Ms. Ho was not read *Miranda* warnings at any time during the meeting on December 4, 2003.

13. Ms. Ho provide biographical information and was shown three photographs of the citation, envelope, money order, and threatening note that was mailed to the New Mexico MVD.

14. Angst explained to Ho that the woman who received the above documents was very concerned and upset about the threatening note and substance on the documents.

15. Ms. Ho told the Agents that she had received the citation for exceeding the speed limit on I-10 in New Mexico when she was traveling from Phoenix to New Orleans.

16. Ho stated that upon returning to Phoenix, she purchased a money order in the amount of $80.00 to pay the fine imposed.

17. Ho stated that she put the money order in the pre-addressed envelope, sealed it, and put it in the mailbox.

18. Initially, Ho denied attaching the note or the substance to the document.

19. The Agents explained that Ho's rendition of events was not possible and afforded Ho the opportunity to further explain the contents of the envelope.

20. Ho did not offer an explanation other than the one she had given at that point.

21. The Agents then took a break, provided Ho with some water, informed her that the telephone was available for her use if she chose to call anyone for assistance (Ho also had her personal cell-phone available for use at all times), and allowed Ho the opportunity to use the restroom if she desired.

22. After leaving Ho alone in the conference room for a short time, the Agents returned.

23. Ho began to cry and told the Agents that she had written the note. Specifically, Ho stated, "If it will make you guys happy, I'll tell you I wrote the note."

24. The Agents told Ho they wanted only the truth.

25. Ho told the Agents that she wrote the note because she was angry about having to pay the $80.00 fine and that payment of the fine was a hardship for her as a student.

26. Ho stated that she decided to write the note impulsively while addressing the envelope.

27. Ho stated that she chewed a piece of Extra brand bubble gum and stuck it to the citation.

28. Ho stated that she did not realize the panic the note would cause.

29. Ho told the agents her actions were wrong and expressed regret.

30. Ho offered to write a note of apology to the MVD employee who opened the letter.

31. Angst asked her instead to write a statement admitting what she had done.

32. Ho authored a written statement confessing to writing the note and mailing the note in the pre-addressed envelope.

33. Ho's written confession was inconsistent with her oral admission insofar as the written version stated that she stepped on the gum and then stepped on the ticket,

        affixing the gum to the ticket.

34.    The Government indicted Ms. Ho on June 9, 2004 charging her with violation of 18 U.S.C. § 876(c) which prohibits mailing of threatening communication to any person.

35.    Subsequently, the Government sought and obtained a Superceding Indictment adding a violation of 18 U.S.C. § 875(c) which prohibits the use of interstate commerce to convey a threat.

## II.   Conclusions of Law

1.    Ho was not in custody during the interview with the FBI Agents on December 4, 2003.

2.    Miranda warnings were not required on December 4, 2003.

3.    Ho's confession on December 4, 2003 was knowingly and voluntarily made.

4.    Ho's Motion to Suppress Statement and Supporting Authorities, filed August 26, 2004 (*Doc. 21*) is properly denied.

5.    The Second Superceding Indictment states all material elements of the charged offenses and is sufficient under Fed.R.Crim.Proc. 7(c).

6.    Whether the communication at issue in this matter was "addressed to any other person", an element of § 876(c), is a question of fact for jury determination.

7.    Whether the language in the written communication at issue in this matter, "CAUTION, TOUCH AT YOUR OWN RISK OR USE GLOVES. HA-HA", constitutes a threat as contemplated by 18 U.S.C. § 876(c) is a question of fact for jury determination.

8.    A threatening communication mailed in interstate commerce can be charged under 18

U.S.C. § 875(c).

9. Defendant's Motion to Dismiss Indictment, filed August 26, 2004 (*Doc. 20*) and Defendant's Motion to Dismiss Count Two of the Indictment, filed December 8, 2004 (*Doc. 46*) are properly denied.

DATED March 29, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for the Government:

    Amy Sirignano, AUSA
    Albuquerque, New Mexico

Counsel for Defendant:

    Alonzo Padilla, AFPD
    Albuquerque, New Mexico